```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT BECKLEY
```

**MICHAEL VINCENT PASCOCCIELLO, et al.,**

    **Plaintiffs,**

**v.**                                            **CIVIL ACTION NO. 5:04-1085**

**INTERBORO SCHOOL DISTRICT, et al.,**

    **Defendants.**

### MEMORANDUM OPINION AND ORDER

Pending before this court are defendant Interboro School District's ("ISD") motion to dismiss complaint (Doc. No 4) and motion to dismiss amended complaint (Doc. No. 62). Both motions have been fully briefed and are ripe for ruling. ISD moves to dismiss asserting that this court lacks personal jurisdiction to hear the claim asserted against them by the plaintiffs. For the reasons detailed herein, ISD's motions are granted.[1]

### I. Legal Framework - Personal Jurisdiction

When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question is one for the judge, with the burden on the plaintiff to prove grounds for jurisdiction by a preponderance of the evidence. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). However, when, as is the case here, the district court addresses such a motion without an evidentiary hearing, and reviews the question

---

[1] This court notes that the Amended Complaint (Doc. 51) is identical to the original complaint except for adding an additional claim against defendant Edgar Freidrichs. For this reason, the court has considered the motions together and will refer to the first motion to dismiss (Doc. No. 4) for all citations.

solely on the basis of the motion, the memoranda of law, and the complaint, the plaintiff need only prove a prima facie case of personal jurisdiction. See Combs, 886 F.2d at 676; Mylan, 2 F.3d at 60. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the evidence and resolve all factual disputes in the plaintiff's favor. See Mylan, 2 F.3d at 60. See also Combs, 886 F.2d at 676 (court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."); Felicia, Ltd. v. Gulf American Barge, Ltd., 555 F. Supp. 801 (D.C. Ill. 1983) ("On motion to dismiss for lack of personal jurisdiction, discrepancies in the versions of the events presented in the affidavits tendered by both sides would be resolved in plaintiff's favor.").

Traditionally, the resolution of the question of jurisdiction over a non-resident defendant has been described as a two-step process. The court must first determine whether the state long-arm statute confers jurisdiction; if the statute does confer jurisdiction, the court then determines whether the exercise of that jurisdiction comports with the constitutional mandates of due process. See Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993); English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990); Bashaw v. Belz Hotel Management Co., Inc., 872 F. Supp. 323, 325 (S.D. W. Va. 1995) (Haden, C.J.);

Faulkner v. Carowinds Amusement Park, 867 F. Supp. 419, 423 (S.D. W. Va. 1994) (Faber, J.).  However, in cases where the state's long-arm statute extends to the limits of due process, the analysis collapses to the second step only, and the court need only determine whether the exercise of jurisdiction comports with due process.  See Bashaw, 872 F. Supp. at 325; Faulkner, 897 F. Supp. at 423.  West Virginia's long-arm statute has been held to extend to the limits of due process.  See Harman v. Pauley, 522 F. Supp. 1130, 1135 (S.D. W. Va. 1981).  Thus the court may begin with the due process question.

The test to be applied when determining whether the exercise of personal jurisdiction comports with due process requires the court to determine whether

> (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolutions of controversies as between states, and (e) the shared interest of the several states in furthering fundamental substantive social policies.

Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945-46 (4th Cir. 1994).  In analyzing this case and dealing with questions of disputed fact, the court has adopted the plaintiffs' statement of the facts unless otherwise noted.

## II.  Factual Allegations

3

The plaintiffs complaint seeks damages for an alleged sexual assault on plaintiff Michael Pascocciello by defendant Edgar Freidrichs. See Doc. No. 1, Attachment A. The alleged assault occurred in 1997 while defendant Freidrichs was employed by defendant Fayette Board. Id. at 5. ISD had employed Freidrichs in the 1960s and 1970s as a teacher. Id. at 2-3. Because Freidrichs sexually assualted several individuals, ISD asked Freidrichs to resign. Id. at 3. Freidrichs agreed to leave in exchange for a letter of reference that would not mention his prior sexual assaults. Id. In 1974 ISD prepared a "reference form" on behalf of Freidrichs for Freidrichs' use in obtaining new employment. Id. With the knowledge that the reference form would be forwarded to potential employers, ISD sent the form to the "Career Development Center" of West Chester State College in Pennsylvania, Freidrichs' alma malta. Id. West Chester State College then forwarded the form to Fayette Board in 1975. See Doc. No. 14 at 7. Fayette Board was considering hiring Freidrichs and submitted an "Out of County Experience Record" to ISD in August, 1975. Id. at 6. ISD returned this form to Fayette Board in September, 1975. Id. at 7. Fayette Board then hired Freidrichs in 1975. Doc. No. 1, Attachment A at 4. Twenty-two years passed and then Freidrichs sexually assaulted a then thirteen-year-old Michael Pascocciello. Id. at 2.

It is undisputed that ISD is an instrumentality of the Commonwealth of Pennsylvania, created as a school district located entirely within Pennsylvania. The parties dispute,

4

however, whether ISD has had sufficient contacts with West Virginia to create either general or specific jurisdiction. The plaintiffs assert several contacts: (1) a "reference form" from ISD that was filed with West Chester College and forwarded to West Virginia and (2) an "Out of County Experience Record" completed by ISD and returned to Board of Education of the County of Fayette ("Fayette Board"). See Plaintiff's Response to Defendant ISD's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) Doc. No. 14") at 6-7.[2] The court finds these contacts to be insufficient to establish personal jurisdiction.

The plaintiffs allege this court has specific jurisdiction, that is that ISD's contacts with West Virginia form the basis of

---

[2] The plaintiffs also attempt to assert general jurisdiction through "continuos and systematic" contacts. See Doc. No. 14 at 14. Plaintiffs assert that they have information "strongly suggesting that ISD had ongoing continuous contacts with numerous institutions at various locations in West Virginia over a number of years." See Doc. No. 14 at 7. The plaintiffs never specify what this evidence is or offer any elaboration. This court rejects plaintiffs' request for jurisdictional discovery. See Carefirst of Maryland, 335 F.3d at 402-03 ("When a plaintiff offers only speculation of conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery). Several months have passed since the filing of the briefs and the plaintiffs have not moved to supplement their motion with additional evidence. Such a vague and unsubstantiated claim cannot be the basis for minimum contacts analysis. General jurisdiction requires activities within a state that are persistent and "continuous and systematic." See Carefirst of Maryland, 334 F.3d at 397. Plaintiffs' conclusory allegations provide no evidence of the type of repeated contacts contemplated by the courts for general jurisdiction. Accordingly, this court rejects plaintiffs' argument that general jurisdiction may exist and analyzes the motion under specific jurisdiction analysis.

the lawsuit. See Doc. 14 at 11. To establish specific jurisdiction, courts look to "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." See Carefirst, 334 F.3d at 397. This court finds that personal jurisdiction fails because ISD did not purposefully avail itself of the privileges of conducting business in West Virginia and because the claim does not arise out of the alleged contacts.

### A.  Purposefully Avail

A party "purposefully avails" itself of a state when there are "some actions by the [party] *himself* that create a 'substantial connection' with the forum State." See Asahi Metal Ind. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 109 (1987) (citation omitted). The rationale behind finding jurisdiction in these actions is that because the defendant would enjoy "'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). It follows from this rationale, though, that the contact with the forum must be at the defendant's direction and not the "unilateral activity of another party or a third person." Id.

Neither contact alleged by the plaintiffs demonstrates that IDS purposefully availed itself of the laws and protections of West Virginia.

The plaintiffs' first asserted contact is the "reference form" sent that ISD prepared for Freidrichs.  See Doc. No. 14.  Although this form found its way to West Virginia and Fayette Board, it was not directed at West Virginia.  The plaintiffs' complaint even notes that the reference form was submitted to West Chester State College, an institution located within Pennsylvania.  See Doc. No. 1, Attachment A, at 3.  Therefore, the only location to which ISD directly sent the "reference form" was to another Pennsylvania business.  The plaintiffs argue that because ISD knew the "reference form" would be forwarded to other states, including West Virginia, it purposefully availed itself of this forum.  Even assuming that ISD knew to which states the "reference form" would be forwarded, and there is no evidence that ISD had any control or knowledge of the eventual destination, that fact is not controlling.  See Asahi, 480 U.S. at 112 ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does ont convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.").  That the "reference form" ultimately ended up in West Virginia was merely a fortuitous confluence of events — that is, Freidrichs' applying for a job in West Virginia, that school having sufficient

interest in Freidrichs to request the "reference form," and Freidrichs not finding another job in a different jurisdiction before that time. A merely fortuitous contact does not provide a basis for personal jurisdiction. See Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) ("[A] defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" (citing ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997)).

The plaintiffs' other asserted contact is the "experience form." See Doc. No. 14 at 14-15. This contact is not sufficient for personal jurisdiction. The plaintiffs admit this contact was initiated by Fayette Board and not by ISD. See id. at 6-7 (noting that Fayette Board mailed the "experience form" to ISD on August 27, 1975, and requested ISD complete the form and return it, which ISD did twelve days later). As noted above, the contact must be more than "the unilateral activity of another party or third person. See Burger King, 471 U.S. at 475; see also Autoscribe Corp. v. Goldman & Steinberg, 47 F.3d 1164, 1995 WL 56662, *5-6 (4th Cir. 1995) ("[B]ecause [the plaintiff] initiated these contacts, the solications do not evidence purposeful activity by the defendants toward the [forum state]"). ISD in no way chose where the "reference form" came from or to where it was to be returned. By merely filling out and returning the "experience form" as requested by Fayette Board, ISD did not avail itself of the privileges and protections of West Virginia.

8

See <u>International Shoe Co. v. State of Wash., Office of Unemployment</u>, 326 U.S. 310, 319 (1945) ("[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state.  The exercise of that privilege may give rise to obligations [including responding to a suit].").

Moreover, both alleged contacts occurred solely by mail. There is some support for the proposition that contacts by mail into a foreign forum are insufficient to establish personal jurisdiction.  See <u>Nicholas v. Buchanan</u>, 806 F.2d 305, 307 (1st Cir. 1986) (declining to find jurisdiction when the inter-state contacts were "'via telephone communications and via U.S. mail'"); <u>see also</u> <u>Scullin Steel Company v. National Railway Utilization Corp.</u>, 676 F.2d 309, 314 (8th Cir. 1982) ("The use of interestate facilities (telephone, the mail) . . . are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process.").  Accordingly, this court finds that ISD did not "purposefully avail" itself of West Virginia as that phrase is understood in relation to personal jurisdiction.

### B.  Arise Out of Contacts

This court notes that even if it found that ISD had purposefully availed itself of the privileges of conducting business in West Virginia, the court would still have grave concerns over whether the suit arose out of the contacts.  The

9

last contact that the plaintiffs allege ISD had occurred in 1975. The injury the plaintiffs suffered did not occur until 1997 when Michael Pascocciello was thirteen.  Plaintiff Michael Pasocciello was not even born at the time of the last substantiated contact between ISD and West Virginia.  Accordingly, this court finds that the alleged contacts are too attenuated to hold that the suit arose out of the contacts with the forum state and GRANTS ISD's motion to dismiss for lack of personal jurisdiction.

### III.  Transfer

The plaintiffs have failed to establish that ISD is subject to personal jurisdiction in West Virginia.  The plaintiffs have asserted that the statute of limitations to bring a suit against ISD has passed.  See Doc. No. 25.  As this case was filed in this jurisdiction within the statute of limitations, the interests of justice would dictate that this action be adjudicated on the merits and not barred by the statute of limitations. Accordingly, this court *sua sponte*, and pursuant to 28 U.S.C. § 1404(a), orders this matter TRANSFERRED to the Eastern District of Pennsylvania, in which personal jurisdiction appears proper.

The Clerk is directed to TRANSFER this matter to the Eastern District of Pennsylvania.  Further, the Clerk is directed to send

10

copies of this Memorandum Opinion and Order to all counsel of record and to the Eastern District of Pennsylvania.

It is SO ORDERED this 16th day of September, 2005.

ENTER:

*David A. Faber*

David A. Faber
Chief Judge

11